1
2
3
4
5
6
7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 JOHN KENNEALLY, on behalf of
himself and all others similarly situated,

CASE NO. 09cv2039-WQH-JMA

12                                                  Plaintiff,

ORDER

13          vs.

14 BANK OF NOVA SCOTIA, BOSA
CALIFORNIA LLC, BOSA
15 DEVELOPMENT CALIFORNIA INC.,
FIRST AMERICAN TITLE CO., and
16 HSBC BANK USA N.A.,

                                                  Defendants.
17

HAYES, Judge:
18
19          The matters before the Court are (1) the Motion to Dismiss the First Amended

20 Complaint filed by Defendants Bosa California, LLC and Bosa Development California, Inc.

21 (collectively, "Bosa") (Doc. # 23); (2) the Motion to Dismiss the First Amended Complaint

22 filed by Defendants Bank of Nova Scotia and HSBC Bank USA, N.A. (collectively,

23 "Lenders") (Doc. # 24); and (3) the Motion to Dismiss the First Amended Complaint and the

24 Motion to Strike Certain Allegations in the First Amended Complaint, filed by Defendant First

25 American Title Co. ("First American") (Doc. # 46 and 47).

**I.      Background**
26
27          On September 18, 2009, Plaintiff initiated this action by filing a Complaint in this

28 Court.  (Doc. # 1).

          On November 20, 2009, Plaintiff filed a First Amended Complaint.  (Doc. # 3).

**A.    Allegations of the First Amended Complaint**

Bosa and the Lenders are each "developer[s] of Bayside..., a recently completed condominium tower in San Diego, California." (*Id.* ¶¶ 5-7, 9). "First American is the designated escrow holder for Bayside." (*Id.* ¶ 8).

"In November 2006 Plaintiff ... signed a form purchase contract provided by Bosa ... to purchase unit No. 2302 in Bayside and deposited the sum of $202,170 into an escrow account maintained by First American." (*Id.* ¶ 11). "Plaintiff did not receive a federal property report before signing the purchase contract." (*Id.* ¶ 12). "The purchase contract stated unit No. 2302 would be 1404 square feet.... The Bayside website maintained by Bosa ... further represented that units with the floorplan of No. 2302 would be '1395-1404 sq. ft. approx.'" (*Id.* ¶¶ 13-14). "In fact, the size of the unit, as measured by an independent appraiser, is 1248 square feet, 156 square feet smaller than the size claimed in the contract and 148 square feet smaller than the lower bounds of the range on the Bayside website.... This discrepancy greatly lowered the value of the unit. The difference between what [Plaintiff] was promised and what Bosa proffered is equal to the omission of an entire 12x13 bedroom." (*Id.* ¶¶ 15-16).

"Bosa supplies purchasers a 'Residential Unit Floorplan' as Addendum No. 1 to the purchase contract. This page contains a visual schematic of the unit, many dimension measurements, and a statement containing language such as 'all references to square footage or floor area are approximate' and that 'Buyer should not rely upon any advertising materials to determine the size of Buyer's Residential Unit.'" (*Id.* ¶ 22). "This statement, however is insufficient to act as a disclaimer in that it (1) is inconspicuously nested within, and covered by, several gridlines and various numerical calculations of the floor plan; (2) is printed down the page at a nearly 90-degree angle clockwise from the orientation of the page as it was presented to buyers, including [Plaintiff]; (3) is in small, hard-to-read, ≈10-point font; (4) misleadingly purports to disclaim the accuracy of all Bosa square footage calculations on the very page containing a vast array of precise (to the nearest inch) numerical measurements that collectively represent the area of the respective unit." (*Id.* ¶ 23).

"Additionally, as elsewhere in Bosa's purchase documents and advertising materials, the statement in Addendum No. 1 uses the misleading, non-standard term 'gross square footage' ('GSF') to describe the unit rather than gross living area ('GLA'), the standard method of measurement used in condominium appraisals."  (*Id*. ¶ 24).  "Utilizing the non-standard GSF methods results in substantially larger and highly misleading measurements than those attained using standard GLA measurement methods, has not been and is not now common practice among condominium developers."  (*Id*. ¶ 25).

"The purchase contract at §3.2 notes square footages presented in its advertisements, purchase documents, and verbal representations are approximations.  This section states that 'Buyer by its execution of this Agreement agrees that it is not relying upon any brochures, sales documents, or oral statements by Seller or Seller's agents regarding the square footage of the Condominium.'"  (*Id*. ¶ 26).  "This statement does not properly disclose that the constructed unit will be of a substantially smaller size than represented, only that Buyer is not purchasing 'a certain amount of footage, but rather air space' despite that Defendants use 'square footage,' rather than 'air space,' calculations ubiquitously in sales documentations and statements."  (*Id*. ¶ 27).  "As §3.2 attempts to waive Buyer's reliance on such documentation and statements as they relate to the purchase of units at Bayside, effectively allowing the Seller to offer a unit of any size and composition it chooses, the contract is illusory."  (*Id*. ¶ 28).

"Though a similar disclosure is made regarding square footage estimates, it is inconspicuously located in the third of the five addenda to the purchase contract rather than in the contract itself.  It appears in the middle of the thirtieth of forty legal-sized pages Bosa supplied purchasers."  (*Id*. ¶ 29).  "Though this disclosure does mention that Bosa's measurement 'may' differ from 'the actual square footage of the air space' for a given unit, it fails to adequately explain that Bosa's measurement methods uniformly result in larger measurements than standard methods would otherwise attain."  (*Id*. ¶ 31).

"While the statements in §3.2 and Addenda Nos. 1 and 3 impliedly disclose that unit sizes cannot be estimated to the exact square foot, they fail to disclose that units, from the commencement of the Bayside project, were intended to be substantially and uniformly smaller

in size than described.  They thus fail to adequately serve as disclaimers to representations found in all advertising and contract documents that state an exact or near-exact unit measurement." (*Id.* ¶ 32).  "Further, because federal and private lenders require appraisers to use the standard GLA method, mortgage financing is not available on standard terms where the property's price was based on non-standard GSF measurements." (*Id.* ¶ 33).

"[The Lenders] are the construction and development lenders for Bayside.  Because of the poor sales performance of the Bayside project, Bosa was forced to apply to [the Lenders] for a restructuring of the loan, including forgiving part of the loan principal, but had to offer substantial concessions in return for the forebearance." (*Id.* ¶ 20).  "Bosa's inability to perform on the terms of the original loan gives [the Lenders] effective control over the Bayside project given they hold the leverage of refusing further modifications and instead foreclosing on the property." (*Id.* ¶ 21).

The First Amended Complaint contains eight Counts: (1) fraud, in violation of California Civil Code § 1709, against Bosa; (2) breach of contract against Bosa; (3) false advertising, in violation of California Business and Professions Code § 17500 *et seq.*, against Bosa and the Lenders; (4) unjust enrichment, constructive trust and equitable lien against all Defendants; (5) untrue statements in the sale of subdivided lots, in violation of 15 U.S.C. § 1703(a)(2)(B),[1] against Bosa and the Lenders; (6) failure to provide a property report, in violation of 15 U.S.C. §§ 1703(a)(1)(B), 1703(a)(1)(C) and 1709, against Bosa and the Lenders; (7) failure to satisfactorily complete and provide a statement of record, in violation of 15 U.S.C. §§ 1703(a), 1705 and 1709, against Bosa and the Lenders; and (8) violation of the California unfair competition law, California Business and Professions Code § 17200 *et seq.* against Bosa and the Lenders.

Plaintiff brings this action on behalf of himself and the following putative class: "All persons and entities (excluding officers, directors, and employees of Defendants) who signed a purchase contract for a residential condominium unit at Bayside." (*Id.* ¶ 34).

---

[1] The First Amended Complaint erroneously states that Count V is brought pursuant to "15 U.S.C. § 1704(a)(2)(B)," which does not exist.  (Doc. # 34 at 7 n.5).

Plaintiff seeks "rescission of the purchase contract"; "a constructive trust or equitable lien to be placed on all funds in the possession of Defendants and their affiliated entities and subsidiaries which were paid by Plaintiff and the Class in their performance of the terms of the purchase contract"; compensatory and punitive damages; and attorneys' fees and costs. (*Id.* at 14).

## B.   Pending Motions

On November 20, 2009, Plaintiff filed a Motion for Class Certification and Appointment of Class Counsel. (Doc. # 4).

On December 28, 2009, Bosa filed its Motion to Dismiss. (Doc. # 23).

On December 28, 2009, the Lenders filed their Motion to Dismiss. (Doc. # 24).

On January 6, 2010, the Court issued an Order vacating the hearing date for Plaintiff's Motion for Class Certification and Appointment of Class Counsel. (Doc. # 31).

On January 19, 2010, Plaintiff filed a response in opposition to Bosa's Motion to Dismiss. (Doc. # 34).

On January 25, 2010, Bosa filed a reply brief. (Doc. # 36).

On February 2, 2010, Plaintiff filed a response in opposition to the Lenders' Motion to Dismiss. (Doc. # 40).

On February 4, 2010, Plaintiff filed a surreply brief in opposition to Bosa's Motion to Dismiss. (Doc. # 42).

On February 9, 2010, the Lenders filed a reply brief. (Doc. # 45).

On February 12, 2010, First American filed its Motion to Dismiss and Motion to Strike. (Doc. # 46 and 47).

On March 8, 2010, Plaintiff filed responses in opposition to First American's Motion to Dismiss and Motion to Strike. (Doc. # 48 and 49).

On March 15, 2010, First American filed reply briefs. (Doc. # 50 and 51).

## II.   Discussion

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Courts may "consider ... matters of judicial notice without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**B.    Bosa's Motion to Dismiss**

**1.    Contentions of the Parties**

Bosa contends two of Plaintiff's three claims which are based upon the Interstate Land Sales Full Disclosure Act ("Land Sales Act") should be dismissed because "documents that are subject to judicial notice and otherwise may be considered on a motion to dismiss show that Bosa has complied with the [Land Sales Act]." (Doc. # 23-1 at 2).  Bosa explains: "The Department of Housing and Urban Development ('HUD') has determined that compliance with California law regarding subdivision disclosures constitutes compliance with the [Land Sales

Act] registration and disclosure requirements. The California Department of Real Estate ... has issued an administrative order determining that Bosa has complied with those requirements and HUD has accepted that determination as constituting compliance with the [Land Sales Act]." (*Id.*)  Bosa contends: "[T]he very language and provisions of the Purchase Agreement ... debunks all of the remaining claims alleged in the [First Amended Complaint] by undercutting Plaintiff's ability to allege (a) reliance and causation, which is necessary for his fraud based claims (Counts I, III, IV, V and VIII) and (b) breach for his contract based claims (Counts II and IV)." (*Id.*)

Plaintiff contends that Bosa's Land Sales Act argument relies upon "factual allegations, many unsupported—and ones which contradict the allegations in the Complaint, which must be taken as true on a motion to dismiss—and are therefore inappropriate for resolution at the motion to dismiss stage....  Even if the Court were to consider Bosa's factual allegations relating to the registration and disclosure process, it should find that the Public Report was insufficient under the Act." (Doc. # 34 at 15 (quotation omitted)).  Plaintiff contends that the disclaimer provisions relied upon by Bosa are "insufficient to shield Bosa from liability because, while disclaiming a duty to provide an *exact* square footage, they do promise buyers that delivered units will be *approximately* the size represented—a promise which induced class members to purchase condos smaller than promised for more than they were worth." (Doc. # 34 at 1).  Plaintiff contends that "Bosa interprets the Purchase Agreement to give Bosa complete discretion to determine the final size of its condos, even after the parties had already agreed to the sale and money had transferred hands, and notwithstanding the promise of a unit of an 'approximate' size, and in 'substantial compliance' with the floor plan shown.  If Bosa is correct, it had carte blanche to deliver condos in any size, configuration and condition it wanted.  For Bosa to prevail on this theory, it must maintain that delivery of a 10 square foot condo would have satisfied a Purchase Agreement for a 1,400 square foot condo." (*Id.*)

## 2.   Request for Judicial Notice

"A district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not

1   physically attached to the plaintiff's pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06

2   (9th Cir. 1998) (quotation omitted). Also, "a district court ruling on a motion to dismiss may

3   consider a document the authenticity of which is not contested, and upon which the plaintiff's

4   complaint necessarily relies." *Id.* at 706; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

5   Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which

6   the plaintiff's claim depends on the contents of a document, the defendant attaches the

7   document to its motion to dismiss, and the parties do not dispute the authenticity of the

8   document, even though the plaintiff does not explicitly allege the contents of that document

9   in the complaint."). "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters

10  of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation

11  omitted).

12       Bosa requests that the Court take judicial notice of the following documents: (1) the

13  Deposit Receipt, Offer to Purchase Property and Escrow Instructions between Bosa and

14  Plaintiff (collectively, "Purchase Agreement"); (2) the Receipt for Public Report signed by

15  Plaintiff; (3) the Final Subdivision Public Report Condominium – HUD/OCRA, file no.

16  124390LA-F00 issued by the Commissioner of the California Department of Real Estate for

17  Bosa's Bayside development ("Public Report"); (4) copy of a webpage of HUD regarding

18  Bayside's registration with HUD under the Land Sales Act; and (5) a letter from an employee

19  of HUD to a Bosa employee, dated October 25, 2006, accepting for filing Bosa's Statement

20  of Record for Bayside. (Doc. # 23-2, Exs. A-E).

21       The Purchase Agreement is expressly referenced in the First Amended Complaint and

22  Plaintiff has not challenged its authenticity. Accordingly, the Court takes judicial notice of the

23  Purchase Agreement. *See Parrino*, 146 F.3d at 705-06.

24       The Receipt for Public Report is neither referenced in the First Amended Complaint,

25  nor do Plaintiff's claims "necessarily rel[y]" upon the Receipt for Public Report. *Id.* at 706.

26  The First Amended Complaint expressly alleges that "Plaintiff did *not* receive a federal

27  property report before signing the purchase contract." (Doc. # 3 ¶ 12 (emphasis added)).

28  Accordingly, the Court does not take judicial notice of the Receipt for Public Report.

The Public Report is a matter of public record, and Plaintiff has not challenged its authenticity.  Accordingly, the Court takes judicial notice of the Public Report.  *See Lee*, 250 F.3d at 689.

Plaintiff has not challenged the authenticity of the HUD webpage regarding Bayside's registration under the Land Sales Act.  Accordingly, the Court takes judicial notice of it.  *See New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of data on web sites of federal agencies); *Labrador v. Seattle Mortg. Co.*, --- F. Supp. 2d ---, No. 08-2270, 2010 WL 289296, at *9 (N.D. Cal., Jan. 15, 2010) (taking judicial notice of material on the HUD website).

Bosa has failed to show that the October 26, 2009 letter from HUD to Bosa is incorporated by reference in the First Amended Complaint or is a matter of public record. Accordingly, the Court does not take judicial notice of the October 26, 2009 letter.  (Doc. # 23-2, Ex. E).

### 3.    Purchase Agreement

Bosa cites to the following portions of the Purchase Agreement, of which the Court takes judicial notice.  Section 3.2 of the Purchase Agreement, which is on a page initialed by Plaintiff, provides:

> **No Representation Regarding Square Footage.**  The floor plan, which is attached, is not intended to represent the square footage of the Residential Unit which Buyer is purchasing.  It only shows the approximate configuration of the Residential Unit.  As the purchaser of a Condominium within the Project, Buyer is not purchasing a certain amount of square footage, but rather is purchasing air space as shown on the Condominium Plan.  Representations of square footage, which may have been provided to Buyer in sales materials or other documents, are approximate only.  Buyer by its execution of this Agreement, agrees that it is not relying upon any brochures, sales documents or oral statements by Seller or Seller's agents regarding the square footage of the Condominium.

(Doc. # 23-2, Ex. A at 6).

Addendum 1 to the Purchase Agreement, which is on a page initialed by Plaintiff, is an architectural drawing of Plaintiff's condominium unit and includes a legend that reads:

> All references to square footage or floor area are approximate and are based upon gross square footage of the Residential Units shown on the architectural plans.  The actual square footage of the Residential Units will be less than the gross square footage.  Buyer should not rely upon any advertising materials to determine the size of Buyer's Residential Unit.  Only the as-built condition will

determine the square footage of Buyer's Condominium.  All renderings, floor plans and site plans shown in the sales office, brochures and other advertising materials are approximate illustrations only and are subject to change.  Ask a sales person for details.

(*Id.*, Ex. A at 18).  Paragraph 34 of Addendum 3 to the Purchase Agreement, which is on a page initialed by Plaintiff, reads:

**Square Footage.**  Buyer is advised that different square footages and Unit dimensions of a Residential Unit may have been shown in different documents that were provided to Buyer.  Advertisements, marketing materials, construction drawings, condominium plans and any other information which contains or refers to dimensions and square footage measurements of Residential Units are appropriate [sic].  Some of the references regarding square footage are calculated based upon the approximate gross square footage of the Residential Unit, which may include exterior walls, the centerline of demising walls, corridor walls and common walls.  These measurements may also include mechanical, electrical or related ducts appurtenances or load bearing columns or walls.  Other methods calculate net square footage as measured from the face of the perimeter wall.  As a purchaser of a Condominium, your separate interest will consist of the air space of your Residential Unit up to the face of the perimeter walls.  This is the area shown as the Residential Unit on the Condominium Plan and described in the Declaration.  This means that the approximate gross square footages or floor areas shown in the marketing materials may be more than the actual square footage of the air space within your residential unit.

As a purchaser of a Condominium within the Community, you are not purchasing a certain amount of square footage, but rather you are purchasing a Condominium which includes the air space as shown on the Condominium Plan and an undivided interest in the other components of the Community.  The value of the Residential Unit has not been based solely upon a per square footage basis, but rather upon a variety of factors.  Buyers acknowledge that their [sic] will be variances between the square footage information and the actual square footage within the Residential Unit.  Buyer should not rely upon the references in any plans, advertisements, marketing materials, construction drawings or other materials to determine the square footage of Buyer's residence.  Only the as-built condition will determine the square footage of Buyer's residence.

(*Id.*, Ex. A at 30).

### 4.    Land Sales Act Claims

The Land Sales Act, 15 U.S.C. §§ 1701 *et seq.*, is a consumer protection law "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 778 (1976).  It is administered by HUD and its regulations are found at 24 C.F.R. §§ 1710.1 *et seq.*  The Land Sales Act requires developers of unimproved subdivided lots to (1) file a Statement of Record with the Secretary of HUD, 15

U.S.C. § 1704, and (2) provide potential purchasers with a detailed Property Report before signing a contract of sale.  *See* 15 U.S.C. §§ 1703, 1707.  It also contains fraud provisions which give purchasers civil claims and a right of action in federal court for false or misleading statements relating to such lots.  *See* 15 U.S.C. § 1703.  "The disclosure requirements of the Land Sales Act are designed to prevent fraud in interstate land transactions, and the Act should be liberally construed in favor of broad coverage to effectuate its remedial purpose." *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1302 (9th Cir. 1979) (citation omitted).

Bosa moves for the dismissal of each of the three Land Sales Act claims alleged in the First Amended Complaint.

### a.        Count V: Untrue Statements

The relevant fraud provision of the Land Sales Act states:

> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails– ... with respect to the sale ..., or offer to sell ..., any lot ... – ... to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot....

15 U.S.C. § 1703(a)(2)(B).

The First Amended Complaint alleges that Bosa violated this provision because "[t]he descriptions of the size of units at Bayside were untrue, and as a result of these untrue statements Plaintiff [was] damaged."  (Doc. # 3 ¶ 70).  The First Amended Complaint adequately alleges that Bosa's website materially misrepresented the size of his condominium unit, which induced Plaintiff to pay an inflated price.  (*Id*. ¶¶ 14-16, 50-51).

The First Amended Complaint also adequately alleges that the Purchase Agreement itself made material misrepresentations.  The First Amended Complaint alleges that, while the Purchase Agreement "does mention that Bosa's measurement 'may' differ from 'the actual square footage of the air space' for a given unit, it fails to adequately explain that Bosa's measurement methods *uniformly* result in larger measurements than standard methods would otherwise attain."  (*Id*. ¶ 31).  Moreover, the Purchase Agreement repeatedly states that

"[r]epresentations of square footage, which may have been provided to Buyer in sales materials or other documents, are approximate only." (Doc. # 23-2, Ex. A at 6; *see also id.* (stating that the attached floor plan "shows the approximate configuration of the Residential Unit"); *id.*, Ex. A at 18 ("All renderings, floor plans and site plans shown in the sales office, brochures and other advertising materials are approximate illustrations only and are subject to change.")). The First Amended Complaint alleges that these statements do not "properly disclose that the constructed unit will be of a substantially smaller size than represented." (Doc. # 3 ¶ 27; *see also id.* ¶ 32 ("While the statements in §3.2 and Addenda Nos. 1 and 3 impliedly disclose that unit sizes cannot be estimated to the exact square foot, they fail to disclose that units, from the commencement of the Bayside project, were intended to be substantially and uniformly smaller in size than described. They thus fail to adequately serve as disclaimers to representations found in all advertising and contract documents that state an exact or near-exact unit measurement.")). The allegations in the First Amended Complaint are sufficient to state a fraud claim. *Cf. McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 796-98 (2008) ("McClain alleges that the Charanians exaggerated the size of her unit by 186 square feet, or 7.6 percent of its actual size, and increased her share of the common expenses by 4 percent through a calculation that understated the size of the shopping center by 965 square feet, or 8.1 percent of its actual size.... [T]hese discrepancies ... cannot be regarded as de minimis or necessarily 'near to' the actual sizes as a matter of law.... [T]he fact that Paragraph 2.1 put McClain on notice that the Charanians' representations of size were approximations does not preclude her from showing that they were, in fact, materially and unreasonably inaccurate."); *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1080-81 (1998) ("Given the rule that an owner of real property is presumed to know the size of the property and that a buyer is ordinarily entitled to rely upon the owner's representation of size without having to hire an expert to discover its falsity, a jury could reasonably find that a grossly erroneous 'approximation' of size is an actionable misrepresentation.") (citation omitted).

Bosa contends that Plaintiff's fraud claims (including the Land Sales Act fraud claim) should be dismissed because the Purchase Agreement contains provisions stating that Plaintiff

1   "agrees that [he] is not relying upon any brochures, sales documents or oral statements by

2   [Bosa or Bosa's agents] regarding the square footage of the Condominium." (Doc. # 23-2, Ex.

3   A at 6). Bosa contends that these provisions make "Plaintiff's reliance on the marketing

4   materials ... not reasonable as a matter of law." (Doc. # 36 at 3).

5          There is substantial authority that a showing of reliance is not required to prove a

6   violation of the fraud provisions of the Land Sales Act. *See Disandro v. Makahuena Corp.*,

7   588 F. Supp. 889, 894 (D. Haw. 1984) ("The legislative intent [of the Land Sales Act] was to

8   create an open, honest condominium market. To require individual purchasers to prove

9   reliance would thwart that legislative goal."); *see also Burns v. Duplin Land Dev., Inc.*, 621

10  F. Supp. 2d 292, 304-05 (E.D.N.C. 2009) (same, collecting cases); *but see Garcia v. Santa

11  Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007).

12         Even if reasonable reliance is required, the First Amended Complaint alleges that

13  Plaintiff "justifiably and reasonably relied upon [Bosa's alleged] material misrepresentations."

14  (Doc. # 3 ¶ 51). Although the Purchase Agreement states that "Buyer ... agrees that it is not

15  relying upon any brochures, sales documents or oral statements by Seller or Seller's agents

16  regarding the square footage of the Condominium," (Doc. # 23-2, Ex. A at 6), the Purchase

17  Agreement also instructs the buyer to "[a]sk a sales person for details" regarding the "gross

18  square footage of the Residential Units" and the "renderings, floor plans and site plans shown

19  in the sales office, brochures and other advertising materials" (*id.*, Ex. A at 18). The First

20  Amended Complaint also alleges that "[a]s [the Purchase Agreement] attempts to waive

21  Buyer's reliance on such documentation and statements as they relate to the purchase of units

22  at Bayside, effectively allowing the Seller to offer a unit of *any* size and composition it

23  chooses, the contract is illusory." (Doc. # 3 ¶ 28). At the motion to dismiss stage, the Court

24  cannot conclude that the "no reliance" provisions in the Purchase Agreement render Plaintiff's

25  alleged reliance unreasonable as a matter of law. *See Hinesley v. Oakshade Town Ctr.*, 135

26  Cal. App. 4th 289, 301 (2005) ("[A] per se rule that an integration/no oral representations

27  clause establishes, as a matter of law, that a party claiming fraud did not reasonably rely on

28  representations not contained in the contract is inconsistent with California law.").

Bosa also contends that consideration of evidence that Bosa represented that the square footage of Plaintiff's unit would be 1404 square feet (Doc. # 3 ¶ 13), or within a range of between "1395 - 1404 sq. ft. approx." (Doc. # 3 ¶ 14), is barred by California's parol evidence rule.

Under California law, "[t]he execution of a contract in writing ... supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Cal. Civ. Code § 1625. California recognizes a number of exceptions to the parol evidence rule. For example, in a property sales contract, if the description of the property "does not appear to be complete, it may be completed by extrinsic parol evidence." *Palm Springs-La Quinta Dev. Co. v. Palm Springs Land & Irrigation Co.*, 36 Cal. App. 2d 730, 736 (1940). Also, "[a] party to a contract who has been guilty of fraud in its inducement cannot absolve himself ... from the effects of his ... fraud by any stipulation in the contract, either that no representations have been made, or that any right that might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 794 (2008) (citing 1 Witkin, Summary of Cal. Law, Contracts, § 304 at 330).

The First Amended Complaint alleges fraud in the inducement (Doc. # 3 ¶ 52) and alleges that, if the "no reliance" provisions are enforced, then the Purchase Agreement would "effectively allow[] the Seller to offer a unit of *any* size and composition it chooses" (*id.* ¶ 28). The allegations of the First Amended Complaint adequately invokes the fraud and the incomplete property description exceptions to the parol evidence rule. *See McClain*, 159 Cal. App. 4th at 794; *Palm Springs-La Quinta Dev. Co.*, 36 Cal. App. 2d at 736. At the motion to dismiss stage in the case, the Court cannot conclude that the parol evidence rule operates to bar Plaintiff's fraud claims.

Bosa's Motion to Dismiss Plaintiff's Land Sales Act fraud claim is denied.

**b.    Counts VI and VII: Failure to Provide a Property Report**

The Land Sales Act provides:

It shall be unlawful for any developer ...

> (B) to sell ... any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser ... in advance of the signing of any contract ... ; [or]

> (C) to sell ... any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder....

15 U.S.C. § 1703(a)(1); *see also id.* §§ 1705 (stating the requirements of a "statement of record"), 1707 (stating the requirements of a "property report"), 1709 ("A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title."").

The First Amended Complaint alleges that Bosa failed to provide Plaintiff with a property report, in violation of 15 U.S.C. §§ 1703(a)(1)(B), 1703(a)(1)(C) and 1709, and Bosa failed to "make certain specific disclosures about the lot in the Statement of Record," in violation of 15 U.S.C. §§ 1703(a), 1705 and 1709.  (Doc. # 3 ¶ 78).

Bosa contends that Plaintiff's Land Sales Act claims should be dismissed based upon documents attached to the Declaration of Robert W. Brownlie.  (Doc. # 23-1 at 10-16; Doc. # 23-2).  As discussed above, the Court declines to take judicial notice of two of these documents, the Receipt for Public Report and the October 26, 2009 letter from HUD to Bosa. Because Bosa's contentions are based upon these documents, the Court denies Bosa's Motion to Dismiss Counts VI and VII.

### 5.    State Law Claims

#### a.    Counts I, III and VIII: Claims Based on Misrepresentations

Count I of the First Amended Complaint alleges fraud, in violation of California Civil Code § 1709; Count III alleges false advertising, in violation of California Business and Professions Code § 17500 *et seq.*; and Count VIII alleges violations of the California unfair competition law, California Business and Professions Code § 17200 *et seq.*  Bosa contends that each of these Counts should be dismissed based upon the same arguments Bosa made against the Land Sales Act fraud claim, Count V.  (Doc. # 23-1 at 5-9 (moving brief, grouping Counts

I, III, IV, V and VIII in the same discussion); Doc. # 36 at 2-4 (reply brief, same)).  For the reasons stated above with respect to Plaintiff's Land Sales Act fraud claim, Bosa's Motion to Dismiss Counts I, III, and VIII is denied.

### b.    Count II: Breach of Contract

Count II of the First Amended Complaint alleges that "Bosa ... contracted to provide Plaintiff ... [a] condominium unit[] of a certain size, and materially breached this obligation by delivering [a] materially smaller condominium unit[]."  (Doc. # 3 ¶ 55).  The First Amended Complaint alleges that "[t]he purchase contract stated unit No. 2302 would be 1404 square feet."  (*Id*. ¶ 13).

Bosa contends:

> [T]he Purchase Agreement does not provide that 'unit No. 2302 would be 1404 square feet' as Plaintiff alleges.  Since that term is not in writing, it is not enforceable as a matter of law under the Statute of Frauds.  Moreover, the alleged term is directly at variance and contradicted by the Purchase Agreement, which unambiguously provides that:
>
>> As the purchaser of a Condominium within the Project, Buyer is not purchasing a certain amount of square footage, but rather is purchasing air space as shown on the Condominium Plan.  Representations of square footage, which have been provide[d] to Buyer in sales materials or other documents, are approximate only.  Buyer by its execution of this Agreement, agrees that it is not relying upon any brochures, sales documents or oral statements by Seller or Seller's agents regarding the square footage of the Condominium.
>
> Consequently, Plaintiff's claim is also barred by the Parol Evidence Rule.  Therefore, Plaintiff's breach of contract claim (Count II) fails as a matter of law.

(Doc. # 23-1 at 9-10 (citations omitted)).

Plaintiff contends:

> Bosa is incorrect when it asserts that the Purchase Agreement does not show unit #2302 at 1,404 square feet.  As alleged in the Complaint (¶ 22), the Purchase Agreement contains an Addendum # 1 titled 'Residential Unit Floor Plan.'  The Floor Plan comprises a schematic drawing of the unit, with detailed measurements of each room.
>
> While the Purchase Agreement might legitimately disclaim Bosa's obligation to provide a unit of this exact square footage, the contract nevertheless states (1) that Bosa will provide the unit 'in substantial conformance' with the Floor Plan (Purchase Agreement § 3.1 & Addendum 1), and (2) that representations of the square footage—both on the Floor Plan and in sales materials—are 'approximate' (Purchase Agreement § 3.2, Addendum 1, and Addendum 3 at ¶ 34).

1   (Doc. # 34 at 8-9).[2]

2   "A cause of action for breach of contract requires proof of the following elements: (1)

3   existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

4   defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters*

5   *v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008) (citation omitted). Bosa does not dispute

6   that the First Amended Complaint adequately alleges facts which, if true, would establish

7   elements (1), (2) and (4). (Doc. # 3 ¶¶ 11, 56).

8   As discussed above, the First Amended Complaint adequately alleges that the Purchase

9   Agreement made representations regarding the size of Plaintiff's unit. (Doc. # 3 ¶¶ 13, 27, 31-

10   32, 55; *see also* Doc. # 23-2, Ex. A at 6 ("Representations of square footage, which may have

11   been provided to Buyer in sales materials or other documents, are approximate only."); *id*.

12   (stating that the attached floor plan "shows the approximate configuration of the Residential

13   Unit"); *id*., Ex. A at 18 ("All renderings, floor plans and site plans shown in the sales office,

14   brochures and other advertising materials are approximate illustrations only and are subject to

15   change.")). The First Amended Complaint adequately alleges that Bosa materially breached

16   these provisions "by delivering [a] materially smaller condominium unit[]." (Doc. # 3 ¶ 55).

17   As discussed above, at this stage, the Court does not find Plaintiff's claims foreclosed

18   by the parole evidence rule. *See Palm Springs-La Quinta Dev. Co.*, 36 Cal. App. 2d at 736 (in

19   a property sales contract, if the description of the property "does not appear to be complete,

20   it may be completed by extrinsic parol evidence"). At this stage, the Court also does not find

21   Plaintiff's breach of contract claim to be foreclosed by the statute of frauds. *See Sterling v.*

22   *Taylor*, 40 Cal. 4th 757, 767 (2007) ("Unlike the parol evidence rule, ... the statute of frauds

23   merely serves an evidentiary purpose.... [W]hen ambiguous terms in a memorandum are

24   _____

25   [2] In his opposition brief, Plaintiff references the implied covenant of good faith and fair
    dealing (Doc. # 34 at 9), but the implied covenant covenant of good faith and fair dealing is
26   not alleged or referenced in the First Amended Complaint. Accordingly, the Court does not
    consider the issue. *Cf. Portney v. CIBA Vision Corp.*, No. CV07-854, 2008 WL 5505517, at
27   *4 (C.D. Cal., July 17, 2008) ("Because a court's review on a motion to dismiss for failure to
    state a claim is limited to allegations made in the complaint, factual allegations which appear
28   only in the Opposition will not be considered in determining whether to dismiss Plaintiff's
    Complaint.") (citation omitted).

disputed, extrinsic evidence is admissible to resolve the uncertainty.... "[Extrinsic evidence] can ... be used to explain essential terms that were understood by the parties but would otherwise be unintelligible to others.") (quotation and citations omitted).

Bosa's Motion to Dismiss Count II is denied.

### c.     Count IV: Unjust Enrichment, Constructive Trust and Equitable Lien

Count IV, "Unjust Enrichment, Constructive Trust, Equitable Lien," alleges:

> 64.   In accordance with the terms of the purchase contract, Plaintiff ... paid monies to First American, some of which likely have been unlawfully transferred to Developer Defendants.
>
> 65.   The purchase contract is a void illusory contract because §6.4 of the contract bars suits for damages brought by buyers in the event of Defendants' nonperformance.  It states that 'Buyer's sole remedy shall be to terminate' the contract, effectively allowing Defendants complete discretion over construction.
>
> 66.   The contract is further void and illusory because §3.2 of the purchase contract attempts to disclaim any representations in 'brochures, sales documents or oral statements by Seller or Seller's agents regarding the square footage of the condominium,' thus implying that Seller has the right to proffer a unit of any size and composition that it chooses.  It further attempts to waive Buyer's reliance on all visual and verbal representations made in advertisements, conversations, and purchase contract documents.
>
> 67.   A constructive trust or equitable lien must be imposed on these monies to prevent the unjust enrichment of the Defendants at the expense of Plaintiff....

(Doc. # 3 ¶¶ 64-67).

Bosa contends that Count IV should be dismissed because "unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." (Doc. # 23-1 at 10 (quotation omitted)).  Bosa also contends that "a constructive trust is not an independent cause of action but merely a type of remedy.... Similarly, an equitable lien is not a cause of action, but rather is a remedy forged by the courts of equity where necessary to accomplish substantial justice."  (Doc. # 36 at 6 (quotations omitted)).

Plaintiff contends that he "do[es] not make an 'unjust enrichment' claim.  Instead, Plaintiff[] use[s] the term 'unjust enrichment' in the Complaint to describe grounds for the relief sought....  Plaintiff['s] claim is for constructive trust and equitable lien, a cause of action in equity, and one which Bosa does not substantively challenge....  Constructive trust is

appropriate both if the Court finds Bosa defrauded Plaintiffs, and to the extent the contract is illusory and therefore unenforceable on its terms such that Plaintiffs may not have adequate remedy in law for damages."  (Doc. # 34 at 11-12).

"The state and the federal courts appear to be unclear whether in California a court may recognize a claim for 'unjust enrichment' as a separate cause of action."  *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (collecting cases).  As Plaintiff states that he "do[es] not make an 'unjust enrichment' claim," (Doc. # 34 at 11), the Court does not decide the issue.

"A constructive trust is 'not an independent cause of action but merely a type of remedy....'"  *Batt v. City and County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007) (quoting *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023, fn. 3 (2000)); *see also Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) ("In their third amended complaint appellants alleged, as causes of action, a resulting trust and a constructive trust.  But neither is a cause of action only a remedy.") (affirming trial court's demurrer).  "A constructive trust is not a true trust but an equitable *remedy* available to a plaintiff seeking recovery of specific property in a number of widely differing situations.  The cause of action is not based on the establishment of a trust, but consists of the fraud, breach of fiduciary duty, or other act that entitles the plaintiff to some relief.  That relief, in a proper case, may be to make the defendant a constructive trustee with a duty to transfer to the plaintiff."  *BGJ Assoc., LLC v. Superior Court*, 75 Cal. App. 4th 952, 967 (1999) (quotation omitted).  Likewise, an equitable lien is an "equitable remedy."  *Farmers Ins. Exchange v. Smith*, 71 Cal. App. 4th 660, 671 (1999); *see also County of Los Angeles v. Constr. Laborers Trust Funds for S. Cal. Admin. Co.*, 137 Cal. App. 4th 410, 416 (2006) ("An equitable lien is a restitutionary remedy given by a court of equity.").

Plaintiff has conceded that he does not assert an unjust enrichment claim, and he has provided no authority that either constructive trust or equitable lien constitute an independent cause of action under California law.  Accordingly, the Motion to Dismiss Count IV against Bosa is granted.  The Court makes no findings concerning whether a constructive trust or an

equitable lien would be an appropriate remedy to any of the remaining claims in the First Amended Complaint.

### C.   Lenders' Motion to Dismiss

#### 1.   Contentions of the Parties

The Lenders contend that the claims against them in the First Amended Complaint should be dismissed because:

> The Lenders are the banks that provided construction financing for the Bayside development, and nothing more. Plaintiff does not allege, nor can he, that Lenders were involved in any marketing or sales of Bayside units, the sole basis for this entire action. Plaintiff targets the Lenders based on his false premise that because they have the power to foreclose in the event of a hypothetical future default by Bosa LLC, they have 'effective control' over Bayside. In reality, however, Plaintiff alleges that the Lenders financed the developer's construction of Bayside, at one point reduced the principal balance of the construction loan, and nothing else.

(Doc. # 24-1 at 1).

Plaintiff contends:

> That the Lenders ... did not deal directly with Plaintiff[] does not end the inquiry into whether they might be liable for the violations alleged in the Complaint, i.e., under California's False Advertising and Unfair Competition Laws and the Interstate Land Sales Full [Disclosure] Act. Instead, the relevant inquiry is whether the Lenders harmed Plaintiff[] by assisting in or encouraging an enterprise that they knew or should have known breached duties owed to Plaintiff[]. Because the Complaint alleges as much, the Lenders' motion to dismiss should be denied.

(Doc. # 40 at 1).

#### 2.   Allegations Related to the Lenders

The First Amended Complaint alleges:

> 20.   [The Lenders] are the construction and development lenders for Bayside. Because of the poor sales performance of the Bayside project, Bosa was forced to apply to [the Lenders] for a restructuring of the loan, including forgiving part of the loan principal, but had to offer substantial concessions in return for the forebearance.
>
> 21.   Bosa's inability to perform on the terms of the original loan gives [the Lenders] effective control over the Bayside project given they hold the leverage of refusing further modifications and instead foreclosing on the property.

(Doc. # 1 ¶¶ 20-21).

#### 3.   Land Sales Act Claims Against the Lenders

The Land Sales Act only regulates "developers" of subdivisions, and limits liability to

"developers" and their "agents."  15 U.S.C. § 1703.  Section 1701 defines a "developer" as "any person who, directly, or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  15 U.S.C. § 1701(5).  It defines an "agent" as "any person who represents or act for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision."  15 U.S.C. § 1701(6).

Cases interpreting the Land Sales Act have held that, as a general rule, lending institutions are not "developers" or "agents" under the Act.  *See Cumberland Capital Corp. v. Harris*, 621 F.2d 246, 249-50 (6th Cir. 1980); *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 709 (E.D. Va. 2009); *Hammar v. Cost Control Mktg. & Sales Mgmt.*, 757 F. Supp. 698, 702 (W.D. Va. 1990).  In *Timmreck v. Munn*, 433 F. Supp. 396 (N.D. Ill. 1977), the court held that the Land Sales Act "exempts lending institutions acting in the normal course of their business," but a lending institution may be considered a developer for purposes of the Land Sales Act where the lending institution "exceeded the normal scope of financing practices and actively participated in and aided the advancement of a fraudulent scheme, or otherwise assisted in the luring of purchasers for an allegedly dubious project."  *Id*. at 406.

Plaintiff contends that the principle of lender liability enunciated in *Timmreck* applies in this case: "The [First Amended] Complaint's allegations are broad enough to cover conduct that, if borne out through discovery, would make the Lenders liable to Plaintiff[] for Land Sales Act violations.  As in *Timmreck*, Plaintiff[] at this stage [is] entitled to some discovery to learn more about the Lenders' participation in the fraud alleged...."  (Doc. # 40 at 6-7).

Plaintiff's general allegation that the Lenders have "effective control over the Bayside project" (Doc. # 1 ¶ 21), "is a conclusion, not a factual allegation stated with any specificity." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").  The Court concludes that the allegations of the First Amended Complaint are insufficient to "be plausibly suggestive," *Moss*, 572 F.3d at 969, that the Lenders "exceeded the normal scope of financing practices and actively

participated in and aided the advancement of a fraudulent scheme, or otherwise assisted in the luring of purchasers for an allegedly dubious project." *Timmreck*, 433 F. Supp. 406. Accordingly, the Lenders' Motion to Dismiss the Land Sales Act claims is granted.

### 4.     State Law Claims Against the Lenders

The First Amended Complaint contains three state law Counts against the Lenders: (III) false advertising in violation of California Business and Professions Code § 17500 *et seq*.; (IV) unjust enrichment, constructive trust and equitable lien; and (VIII) violation of the California unfair competition law, California Business and Professions Code § 17200 *et seq*.

With respect to the claims pursuant to § 17200 and § 17500, Plaintiff contends that "[w]hile 'a defendant's liability must be based on his personal participation in the unlawful practices that are found to violate section 17200 or 17500,' those sections impose liability 'for participation in unlawful practices by aiding and abetting the principal.'" (Doc. # 40 at 2 (quoting *Quezada v. Loan Ctr. of Cal., Inc.*, No. Civ. 08-177, 2008 U.S. Dist. LEXIS 96479, at *13-*14 (E.D. Cal., Nov. 24, 2008)).

Under California law, a claim under § 17200 or § 17500 "cannot be predicated on vicarious liability.... A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (citations omitted). "Liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007) (quotation omitted). Liability cannot be "based on [the defendant]'s omission rather than commission." *Emery*, 95 Cal. App. 4th at 964. When the defendant "played no part in preparing or sending any 'statement' that might be construed as untrue or misleading under the unfair business practices statutes ... there can be no civil liability for unfair practices. Moreover, the law is clear that ... [t]here is no duty to investigate the truth of statements made by others." *Id*. (citations omitted).

The First Amended Complaint fails to adequately allege that the Lenders knew that

Bosa's conduct constituted a breach of a duty and gave substantial assistance or encouragement to Bosa to so act." *Cf. Schulz*, 152 Cal. App. 4th at 93.  The First Amended Complaint also fails to adequately allege that the Lenders played a part in preparing or transmitting the allegedly false or misleading statements.  Accordingly, the Lenders' Motion to Dismiss the § 17200 and § 17500 claims (Counts III and VIII) is granted.

With respect to Count IV, Plaintiff does not contend that he states an unjust enrichment claim.  (Doc. # 34 at 11-12; Doc. # 40 at 7).  The First Amended Complaint does not adequately allege any "fraud, breach of fiduciary duty, or other act that entitles the plaintiff to some relief" against the Lenders.  *BGJ Assoc.*, 75 Cal. App. 4th at 967.  Therefore, the remedies of constructive trust and/or equitable lien are not available to Plaintiff as against the Lender Defendants.  The Lenders' Motion to Dismiss Count IV is granted.

### D. First American's Motion to Dismiss

The sole claim alleged in the First Amended Complaint against First American is Count IV: unjust enrichment, constructive trust and equitable lien.  First American contends that Count IV fails to state a claim against it and therefore First American should be dismissed from the action.  First American contends that "California does not recognize a cause of action for unjust enrichment," and "equitable remedies (like constructive trusts and equitable liens) are just that–remedies."  (Doc. # 46-1 at 5-6).  "In the event that [First American's] Motion to Dismiss is not granted," First American moves to strike certain allegations from the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  (Doc. # 46-1 at 1 n.2).

Plaintiff contends that "First American is not a defendant here because of any alleged fraud, but rather because there is a looming threat that, without First American's presence, the amounts in escrow might be improperly disbursed or retained.  The Purchase Agreement alone does not ... sufficiently protect Plaintiffs' interests if First American is dismissed...." (Doc. # 38 at 3).

Even if unjust enrichment is a cognizable cause of action under California law, *see Nordberg*, 445 F. Supp. 2d at 1100, the First Amended Complaint does not allege that First American would be "enriched" by the money deposited by Plaintiff.  First American is alleged

to be the designated escrow holder for Bayside. (Doc. # 1 ¶ 8). The First Amended Complaint does not allege any wrongdoing on the part of First American. The First Amended Complaint does not plausibly allege that First American will do anything other than retain the money in escrow or disburse the money to either Bosa or Plaintiff pursuant to the terms of the executed Purchase Agreement. *See* Doc. # 46-2 at 4 (First American executed the Purchase Agreement); *cf. Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002) ("[A]n escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with the depositors' instructions. Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions.") (quotation omitted). In his briefing, Plaintiff contends that he "may suffer extreme harm" if First American "does anything other than continue to hold Plaintiffs' money until there is a final judgment in this action." (Doc. # 48 at 3). The basis for this contention is that Bosa "may be unable to satisfy a judgment in Plaintiffs' favor." (*Id.* at 4 n.2). However, Plaintiff has failed to allege or otherwise show that other measures, such as preliminary injunctive relief, would be inadequate to protect Plaintiff from Bosa wrongfully disbursing any money it might receive from First American pursuant to the terms of the Purchase Agreement. Accordingly, the Court concludes that even if unjust enrichment was a cognizable cause of action under California law, the First Amended Complaint fails to adequately allege such a claim against First American.

With respect to constructive trust and equitable lien, Plaintiff has not adequately alleged any "fraud, breach of fiduciary duty, or other act that entitles the plaintiff to some relief" against First American. *BGJ Assoc.*, 75 Cal. App. 4th at 967. Therefore, Plaintiff has not adequately alleged that the remedies of constructive trust and equitable lien are available as against First American.

First American's Motion to Dismiss is granted. First American's Motion to Strike is denied as moot.

### III.   Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss the First Amended Complaint

filed by Defendants Bosa California, LLC and Bosa Development California, Inc. is **GRANTED IN PART** and **DENIED IN PART**. (Doc. # 23). The claims against Defendants Bosa California, LLC and Bosa Development California, Inc. in Count IV (unjust enrichment, constructive trust and equitable lien) of the First Amended Complaint are **DISMISSED** without prejudice.

The Motion to Dismiss the First Amended Complaint filed by Defendants Bank of Nova Scotia and HSBC Bank USA, N.A. is **GRANTED**. (Doc. # 24). All claims against Defendants Bank of Nova Scotia and HSBC Bank USA, N.A. in the First Amended Complaint are **DISMISSED** without prejudice.

The Motion to Dismiss the First Amended Complaint filed by Defendant First American Title Co. is **GRANTED**. (Doc. # 46). The Motion to Strike Certain Allegations in the First Amended Complaint, filed by Defendant First American Title Co., is **DENIED** as moot. (Doc. # 47). All claims against Defendant First American Title Co. in the First Amended Complaint is **DISMISSED** without prejudice.

The Motion for Class Certification and Appointment of Class Counsel is **DENIED** without prejudice to renew the motion to accurately reflect the claims and parties currently before the Court. (Doc. # 4).

DATED:  April 28, 2010

_William Q. Hayes_
**WILLIAM Q. HAYES**
United States District Judge